IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA

V.                    NO. 09-50090

BILLY CRAIG UNDERWOOD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 30, 2012, the Defendant/Movant Billy Craig Underwood (hereinafter "the Defendant") filed a 28 U.S.C. § 2255 motion. (Doc. 55). The parties thereafter submitted briefs, and the matter is now ripe for consideration. The undersigned, being well and sufficiently advised, finds and recommends as follows with respect thereto:

**PROCEDURAL BACKGROUND:**

1. On November 4, 2009, a nineteen-count Indictment was returned charging Defendant with wire fraud, bank fraud, and money laundering, in violation of Title 18 U.S.C. §§ 1343, 1344, and 1957. (Doc. 1).

2. On February 5, 2010, Defendant entered into a Plea Agreement, and entered a plea of guilty to Count I of the Indictment - wire fraud. (Doc. 11).

3. A sentencing hearing was held on September 7, 8, and 10, 2010, and Judgment was entered on September 14, 2010, wherein

-1-

Defendant was sentenced to one hundred eight (108) months imprisonment; three (3) years of supervised release; $100.00 special assessment; $15,000 fine; and $1,887,983.90 in restitution. (Doc. 28). An Amended Judgment was filed on September 24, 2010 to correct a clerical mistake. (Doc. 29).

4. Defendant filed a Notice of Appeal, arguing that the Court erred in denying his request for a downward departure under section 5H1.6[1] of the United States Sentencing Guidelines (U.S.S.G.), failed to properly consider the 18 U.S.C. § 3553(a) factors, and imposed an unreasonable sentence by declining to vary below the Guidelines range. United States v. Underwood, 639 F.3d 1111 (8th Cir. 2011). The Eighth Circuit affirmed the sentence. Id. at 1114.

**GROUNDS FOR § 2255 MOTION:**

5. In the motion now before the Court, which Defendant filed pro se, Defendant asserts the following grounds for relief:

Ground One: He was denied the effective assistance of counsel during the plea and sentencing stages of the proceedings, as his counsel did not conduct a complete investigation of the law and was completely unfamiliar with the sentencing guidelines;

Ground Two: He was denied the effective assistance of

---

[1] § 5H1.6 of the U.S.S.G. relates to "Family Ties and Responsibilities (Policy Statement)."

counsel by the cumulative errors of counsel during the plea and sentencing proceedings, as counsel failed to arrange for character witnesses to appear on behalf of Defendant at sentencing, no letters of support were provided, and he failed to raise and challenge issues which were relevant to sentencing, such as failing to raise the issue clarifying the incremental monetary amounts that Defendant admitted;

Ground Three: He was denied the effective assistance of counsel because his counsel failed to advise Defendant as to all facts and law relevant to his decision to plead guilty; and

Ground Four: He was denied the effective assistance of counsel at the appellate stage of the proceedings, as appellate counsel failed to develop viable issues for appeal.

Defendant raises two additional grounds in his Reply brief, which the Court will treat at Grounds Five and Six.

Ground Five: The Government breached the terms of the Plea Agreement; and

Ground Six: Counsel was ineffective because he failed to prepare the witnesses for the sentencing hearing.

6. With respect to Grounds 1 through 4, the Government argues that Defendant's claims should be disregarded because his claims are conclusory or otherwise contradicted and unsupported by the record in this case. The Government did not respond to the additional grounds raised in Defendant's reply brief.

-3-

**APPLICABLE LAW:**

7. To succeed on his ineffective assistance of counsel claims, Defendant must demonstrate that "(1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'" Miller v. Dormire, 310 F.3d 600, 603 (8th Cir. 2002) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The prejudice requirement has been held to require that there be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  See United States v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). In addition, every effort should be made to eliminate the "distorting effects of hindsight" in assessing the attorney's conduct. Strickland, 466 U.S. at 689.

If Defendant fails to show deficient performance by his counsel, the Court does not need to proceed any further in its analysis of an "ineffective assistance" claim. United States v. Walker, 324 F.3d 1032, 1040 (8th Cir. 2003), cert. denied, 540 U.S. 898 (2003). Defendant's burden is a heavy one, DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000), and there is a "strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance." Davis v. Norris, 423 F.3d 868, 877 (8th Cir. 2005).

The Court will examine each ground of Defendant's motion in

-4-

light of the applicable law.

**EVIDENTIARY HEARING NOT REQUIRED:**

The Eighth Circuit has held that a petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)(quoting United States v. Ledezma-Rodriguez, 423 F.3d 830, 835-36 (8th Cir. 2006). No hearing is required, however, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Anjulo-Lopez, 541 F.3d at 817(quoting Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007)(internal quotation omitted).

In the present case, for the reasons given below, the Court is of the opinion that the record affirmatively refutes the factual assertions upon which Defendant's claims are based, and conclusively shows that Defendant is entitled to no relief.

**GROUND ONE: FAILURE OF COUNSEL TO CONDUCT A COMPLETE INVESTIGATION OF THE LAW AND HIS COMPLETE UNFAMILIARITY WITH THE SENTENCING GUIDELINES:**

8. Prior to Defendant's sentencing, on August 23, 2010, his counsel filed a "Motion for Leave to File Certain Exhibits to Motion for Downward Departure Under Seal" and "Motion for Downward Departure." (Docs. 18 and 19).

In the Motion for Downward Departure (Doc. 19), counsel for

-5-

Defendant assents that the Court should depart downward under U.S.S.G. 5H1.6 and 5K2.0(a)(2,(3) and (4), "based upon Mr. Underwood's extraordinary family circumstances that are outside the heartland of cases addressed by the Guidelines." (Doc. 19 at p. 1).

    9. On September 2,2010, Defendant's counsel filed an eleven-page Sentencing Memorandum, extensively arguing the application of the guidelines to the facts of Defendant's case. (Doc. 22).

    In the Sentencing Memorandum, defense counsel argued that when the Government did not timely object to the original Presentence Report (PSIR), it admitted that the original PSIR was completely factually accurate and indicated that it had no objection to the report of the Probation Officer's original sentence calculation which did not include a two level increase based upon the number of victims. (Doc. 22 at pgs.1-3). Counsel also argued that Defendant's offense did not involve "sophisticated means." (Doc. 22 at pgs.3-10). Finally, counsel argued that the Court should calculate the total offense level as 24 and depart downward to level 10, pursuant to 5H1.6 and 5K2.0(a)(2),(3) and (4) and sentence Mr. Underwood to home detention and probation. (Doc. 22 at p. 10). Defense counsel argued that factoring out the two level adjustments based upon the number of victims and "sophisticated means," reduced the

-6-

total offense level from 28 to 24. (Doc. 22 at p. 10).

10. The sentencing hearing was held before the Honorable District Judge Jimm Larry Hendren on September 7, 8, and 10, 2010. (Doc. 45). Judge Hendren overruled defense counsel's objection relating to the timeliness of the Government's objection to the PSIR, stating that he thought good cause was shown by the Government to allow him to take up the objection. (Doc. 45 at p. 31). Judge Hendren addressed the Government's one objection to the PSIR, which was revised and satisfied. He then addressed defense counsel's objections. As to Objections Number One, Two, Four, and Five, they were either satisfied or withdrawn. (Doc. 45 at pgs. 5-8). Defense counsel's Objection Number 3 related to the probation officer's recommendation that there be points added by reason of there being "sophisticated means" employed in connection with the offense. Judge Hendren allowed the parties to give arguments on this objection.

11. Several witnesses testified, and Judge Hendren also gave counsel for the Government and Defendant opportunities to argue their positions. It is noteworthy that counsel for Defendant argued at length about the provisions in the sentencing guidelines relating to "number of victims" and "sophisticated means" as well as departure and forfeiture. (Doc. 45 at pgs. 395-408).

13. Judge Hendren determined that there were more than ten

-7-

victims in this case, and that defense counsel's objection to the contrary was without merit and was overruled. (Doc. 45 at p. 425). With respect to whether "sophisticated means" were utilized in connection with the activities, Judge Hendren determined that Defendant's method of "putting these entities in place and working these schemes and scams as he did certainly qualifies for the sophistication adjustment." (Doc. 45 at p. 428). He therefore overruled the defense objection on that issue.

By separate written order, on September 10, 2010, Judge Hendren entered an Order denying Defendant's Motion for Downward Departure. (Doc. 25).

14. Based upon the record, it is clear that Defendant's counsel not only spent time researching the relevant law and sentencing guidelines, but also became familiar with the relevant sentencing guidelines. He filed a motion for downward departure, raised objections to issues in the PSIR relating to number of victims and "sophisticated means" contained in the PSIR, and argued at length his objections.

15. In addition, even if counsel was unfamiliar with the guidelines, and such lack of familiarity rose to the level of a constitutional deficiency, Defendant provides mere speculation about the possible prejudice of such an error, which does not provide a basis for the Court to find Defendant was prejudiced.

-8-

See Champion v. United States, 319 Fed. Appx. 443, 446 (8th Cir. 2009); United States v. Vazquez-Garcia, 211 Fed. Appx. 544, 546 (8th Cir. 2007), cert. denied, 128 S.Ct. 344 (2007).

The Court finds Defendant's arguments contained in Ground One to be without merit.

**GROUND TWO: COUNSEL WAS INEFFECTIVE FOR HIS CUMULATIVE ERRORS, IN THAT HE FAILED TO ARRANGE FOR CHARACTER WITNESSES AT SENTENCING, TO PROVIDE LETTERS OF SUPPORT, FAILED TO RAISE THE ISSUE CLARIFYING THE INCREMENTAL MONETARY AMOUNTS, AND FAILED TO OBJECT TO THE LATE FILING OF THE INCLUSION OF ADDITIONAL MATERIALS IN THE PRESENTENCE REPORT, CONTRARY TO 14 DAY LOCAL RULES SET BY THE COURT:**

16. With respect to Defendant's "cumulative error" argument, the Eighth Circuit has recognized "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007)(quoting Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002), cert. denied, 538 U.S. 951 (2003). Each claim must rise or fall on its own merits, and Defendant's claim based upon cumulative error must be denied.

17. With respect to Defendant's argument that his counsel failed to arrange for character witnesses at sentencing, Defendant, his wife, and Dr. Eduardo Mireles-Cabodevila, Pulmonary Critical Care Specialist at UAMS, testified on behalf of Defendant. Defendant has failed to demonstrate that his counsel knew of the existence of any other witnesses, that they

AO72A
(Rev. 8/82)

would have testified, what their testimony would have been, and how their testimony would have changed the outcome of his case. Accordingly, Defendant has failed to show that he was prejudiced by the allegedly deficient performance of his counsel, and his ineffective assistance of counsel claim must fail. See Drew v. United States, 46 F.3d 823, 827 (8th Cir. 1995).

18. The same conclusion can be reached regarding Defendant's contention that his counsel failed to provide letters of support. Defendant merely states that counsel failed to provide letters of support "although many were available." (Doc. 55 at p. 5). Again, Defendant has failed to demonstrate that his counsel knew of the possibility of the existence of letters of support, what they would have said, or how the letters would have changed the outcome of the case. Therefore, Defendant's claim of ineffective counsel must also fail on this issue.

19. With respect to Defendant's argument that his counsel failed to raise the issue clarifying the incremental monetary amounts, in his Plea Agreement, Defendant stipulated and agreed that the total amount of the loans he converted to his own use was $1,887,983.90. (Doc. 11 at p. 4). In fact, at the sentencing hearing, Judge Hendren noted this fact: "Paragraph 12 under that same heading, a stipulation that the defendant stipulates and agrees that the total amount of the loans he converted to his

-10-

own use was $1,887,983.90." (Doc. 45 at p. 416). Judge Hendren continued:

> In another part of the agreement, ... in Paragraph 14, it is acknowledged that – the last sentence of Paragraph 14 says this: "The defendant further agrees that any amount ordered by the Court to be paid as restitution may not be discharged in whole or in part in any bankruptcy proceeding." And above that, the next to last sentence of that paragraph says this: "The defendant agrees the Court's consideration of the amount of restitution shall not" – and that's bolded, all capped, and underlined – "be limited to the amounts alleged in the counts to which the defendant is pleading guilty, but may include stipulated amounts as set forth below, pursuant to Title 18, U.S. Code, Section 3563." Now, I'm not sure what that below means, but I think that must refer back to Paragraph 12 where there's a stipulation as to the amount converted being $1,887,983.90....I think the proof I've heard and the facts before me show that the amount converted was actually that $1,887.983.90, and that's the same thing I think that the order of forfeiture requires.
>
> So that being understood, I inquire of Ms. Johnson, does the United States now have any objection to final approval of that plea agreement?
>
> MS. JOHNSON: No, Your Honor.
>
> THE COURT: Mr. Mulkey, does the defense have any such objection?
>
> MR. MULKEY:   No, Your Honor.

(Doc. 45 at pgs.416-418).

It is clear that the parties and Judge Hendren carefully discussed the amount of money that Defendant converted to his own use, and Judge Hendren relied upon Defendant's stipulation in the Plea Agreement in fashioning his order of restitution.

-11-

The Sixth Amendment is not violated when the court enhances a sentence based on facts admitted by a defendant. <u>United States v. Parsons</u>, 408 F.3d 519, 521 (8th Cir. 2005).

20. Defendant further argues that his counsel failed to object to the late filing of the inclusion of additional materials in the presentence report. However, in his sentencing memorandum (Doc. 22), Defense counsel's first argument is as follows:

> **1. When it did not timely object to the original Presentence Report ("PSR"), the Government admitted that the original PSR was completely factually accurate and indicated that it had no objection to the report of the Probation Officer's original sentence calculation which <u>did not</u> include a two level increase based upon the number of victims.**

(Doc. 22 at p. 1). In addition, at the sentencing hearing, Judge Hendren addressed the issue as follows:

> ...The defendant voiced an objection to that objection based upon the notion that it was not timely offered. The Court has previously addressed the defense objection to the single objection by the United States and has overruled it for reasons that have already been stated on the record.

(Doc. 45 at p. 374).

Clearly, contrary to Defendant's contention, his counsel raised an objection to the untimeliness of the Government's objection to the Pre-sentence Investigation Report.

Based upon the foregoing, the Court finds Defendant's

-12-

arguments in Ground Two to be without merit.

**GROUND THREE: COUNSEL FAILED TO ADVISE DEFENDANT AS TO ALL FACTS AND LAW RELEVANT TO HIS DECISION TO PLEAD GUILTY:**

21.  Defendant contends that he qualified for the acceptance-of-responsibility reduction under 3E1.1 and that his counsel advised him that it was automatic upon his pleading guilty. Although the Government requested that Judge Hendren give Defendant a third point for acceptance of responsibility, Judge Hendren did not do so, and Defendant argues that his counsel was ineffective for failing to object thereto.  Judge Hendren's analysis of the acceptance of responsibility issue is highly informative on this issue, and will be quoted at length:

> THE COURT: ...
> Now let me turn to the pre-sentence investigation report. There is within that report a statement by Ms. Lee that appears – forgive me, I'll have to find that right quickly. That appears on Page 11, Paragraph 28. Ms. Lee says, "The defendant has accepted responsibility in this case through his guilty plea, providing information about his actions in the incident offense and acknowledgment of his actions as shown in the letter he submitted to the Real Estate Commission. However, the probation officer does have concerns about acceptance of responsibility as represented by his mortgage registry with the Arkansas Securities Department on January 6th, 2010, and again failing to admit his previous charges and convictions, not advising that he had recently been charged with a felony and denying bankruptcy within the past 10 years." Now, nonetheless, having said that, in Paragraph 39 there was a recommendation for acceptance of responsibility, a two point reduction.
> Paragraph 40 mentions that if the defendant qualifies for a decrease, the two points recommended, and meets the criteria set forth in Section 3 E 1.1 B, that a third point should be awarded for acceptance of responsibility. ...I refer to that provision in the

-13-

guidelines, and it is Section 3 E 1.1. Now, that provision, Page 371 of the current manual, Subsection A – and this is under which Ms. Lee made the original recommendation, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by two."

Under Subsection B, "If the defendant qualifies for a decrease under Section A and the offense level determined prior to that operation of A is 16 or greater, and on motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and so forth, that the Court may decrease by the third point."

Now, the government has made that motion, but like Ms. Lee, I have reservations about acceptance of responsibility. In the commentary, it is stated that, "Entry of a plea of guilty prior to the commencement of trial, combined with truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable will constitute significant evidence of acceptance of responsibility for the purposes of Subsection A. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a plea of guilty is not entitled to an adjustment under this section as a matter of right."

Now, I mentioned that in the plea agreement, it is stipulated by the defendant that he entered into a fraudulent scheme to defraud investors. Let me get back and get the exact language of that stipulation. "He voluntarily and intentionally and with intent to defraud devised a scheme to defraud utilizing his title and escrow company." The testimonies that I've heard indicates that Mr. Underwood denies that. His representation to the Real Estate Commission is that he just took some funds out of an escrow account to pay his day-to-day bills. I quote: "I used monies from an escrow account of one of those companies for personal use to keep these companies running."

Now that's not a straight out denial of he conduct or the stipulation, but it raises serious concerns in the mind of the Court as to whether Mr. Underwood in fact has acknowledged and accepts

-14-

responsibility and acknowledges that what he did was wrong. He says that. But I'll say here, and with all due respect, that I do not find Mr. Underwood a credible witness. I believed very little of what he had to say. Even when he said, "I realize I've done wrong and that I realize I need to go to prison", I'm not sure I believe that he believes that. So I do not find his testimony credible, nor do I find Ms. Renda Underwood's testimony credible, and I'll come back to that in a moment.

The defendant has volunteered, and perhaps this part of it is credible, that had this thing not come unwound by Ms. Tillery's going to authorities, that he would have continued to operate in the manner that he had by setting up these what I will characterize as bogus transactions, certainly fraudulent transactions, and consistent with the scheme that he admitted in the stipulation that he was engaging in, that he would have continued to do that.

Now, in the commentary under Section 3 E 1.1, the Court says – the Court is told that in determining whether a person is qualified for acceptance, appropriate considerations include, but are not limited to, the following, one of which is B, voluntary termination or withdrawal from criminal conduct or associations. It doesn't appear to me that Mr. Underwood did that at all until he was caught up and the authorities started looking into this and the indictment was returned against him.

He also, despite not having objected to certain assertions in the pre-sentence investigation report as to how certain things were handled, specifically with Ms. Tillery and Mr. Silva and others, he got on the stand and basically said that what these folks told the Court and what was set out in the pre-sentence investigation report as to what happened in connection with their transactions was simply not true. He said, among other things, that contrary to what Ms. Tillery said under oath, that he didn't pressure her to make the loan at all, that it was her idea.

...

So I think by testifying under oath that what has been reported in a pre-sentence investigation report, to which he did not object, and in the fact of sworn testimony by these folks who say this is in fact what happened, that does not, to me, indicate acceptance of responsibility.

...

-15-

My overall impression of Mr. Underwood's
evaluation of this matter is that this is an
inconvenient distraction from his effort to get back
in the saddle as a wheeler and dealer. ...

So for the reasons that I've mentioned, I am not
persuaded that Mr. Underwood is entitled to acceptance
of responsibility and so I will decline to give him
the two points and I'll deny the government's motion
for a third, the result of which will be that instead
of a total offense level of 28, his total offense
level will be 31 for advisory guideline sentencing
purposes.

(Doc. 45 at pgs 418-424). At the conclusion of Judge Hendren's

statements regarding his intentions, he asked the following:

THE COURT: Does the defense have any objection to
those intentions other than those I've already heard?

MR. MULKEY: No, Your Honor.
                        ...
THE COURT: All right, Mr. Underwood, you've heard the
Court's intentions. Do you have anything further you
wish to say before I pronounce sentence, sir?

THE DEFENDANT: No, sir.

(Doc. 45 at p. 446).

22. The Plea Agreement signed by Defendant states that the

Court is not bound by the Guidelines and "may sentence the

defendant to any reasonable sentence within the statutory range

of punishment." (Doc. 11 at p. 5). It also provides that the

Defendant "agrees that any discussions merely attempt to guess

at what appears to be the correct guideline range and do not

bind the district court." (Doc. 11 at p. 6). Defendant also

acknowledged in the Plea Agreement that the actual range may be

greater than contemplated by the parties, and that defendant

-16-

agreed this did not give him the right to withdraw his plea of guilty. (Doc. 11 at p. 6). Therefore, Defendant understood when he entered the Plea Agreement that the Court was not bound by the range contemplated by the parties.

23. It is also clear that had defense counsel stated an objection to the Court's failure to give acceptance of responsibility points, it would have been to no avail, as Judge Hendren was emphatic in his conclusion that based upon testimony and Defendant's conduct, points for acceptance of responsibility were inappropriate in this case.  As urged by the Government, Defendant offers no reason such points were warranted except for his statement that his counsel advised him that it was automatic upon pleading guilty.  The Eighth Circuit has held that "a defendant is not automatically entitled to a reduction for acceptance of responsibility on the basis of having entered a guilty plea. Instead, the burden of proof falls upon the defendant to demonstrate that he has accepted responsibility for his actions." United States v. Goings, 200 F.3d 539, 544 (8th Cir. 2000)(internal citations omitted). Judge Hendren gave Defendant himself an opportunity to address the issue, and he did not avail himself of the opportunity. Furthermore, even if Defendant had, Defendant has failed to show that he was prejudiced by his counsel's failure to object to the Court's denial of acceptance of responsibility points.

-17-

The Court finds Defendant's arguments contained in Ground Three to be without merit.

**GROUND FOUR: APPELLATE COUNSEL FAILED TO DEVELOP VIABLE ISSUES FOR APPEAL:**

22. Defendant argues that Appellate Counsel was unfamiliar with the law as well as the federal sentencing guidelines, and that there were issues available such as the denial of the three points for acceptance of responsibility and a challenge to the enhancement for sophisticated means.   Instead, on appeal, counsel focused on the downward departure issue.

"To establish ineffective assistance of appellate counsel, a defendant must show 2) his appellate counsel's performance fell below an objective standard of reasonableness, and 2) the deficient performance prejudiced his defense." Morelos v. United States, 709 F.3d 1246, 1253 (8th Cir. 2013). The question of whether appellate counsel was ineffective is "not whether counsel's choice to omit [an argument] on appeal was an intelligent or effective decision, 'but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt.'" Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005), cert. denied, 546 U.S. 882 (2005)(quoting Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir. 1996), cert. denied, 519 U.S. 956 (1996). "Counsel is not required to raise every potential issue on appeal. Indeed the Supreme Court has recognized the 'importance of winnowing out weaker arguments

-18-

on appeal and focusing on one central issue if possible, or at most on a few key issues.'" <u>Anderson</u>, 393 F.3d at 754 (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). "'Absent contrary evidence,' we thus assume that appellate counsel's failure to assert an issue was an exercise of 'sound appellate strategy.'" <u>Anderson</u>, 393 F.3d at 754 (quoting <u>Sidebottom v. Delo</u>, 46 F.3d 744, 759 (8th Cir. 1995), <u>cert. denied,</u> 516 U.S. 849 (1995).

Although some of the issues raised in Defendant's § 2255 motion could have been raised on appeal, the choice not to include them in the appellate brief was not unreasonable. Appellate counsel chose to focus his appeal on issues related to downward departure based on his family circumstances. <u>Underwood</u>, 636 F.3d at 1111. As noted by the Government, whether Defendant accepted responsibility is a "factual question that depends largely on credibility assessments made by the sentencing court," and the Eighth Circuit gives great deference to the district court's denial of a request for a reduction for acceptance of responsibility. <u>United States v. Vega</u>, 676 F.3d 708, 723 (8th Cir. 2012)(quoting <u>United States v. Ayala</u>, 610 F.3d 1035, 1036 (8th Cir. 2010)(per curiam)(quotation and citation omitted). Appellate counsel could have reasonably concluded that this issue would have been weak on appeal. In addition, Defendant has failed to demonstrate the outcome of his appeal would have been different had he raised the issues he asserts

-19-

were omitted.

The Court finds Defendant's arguments contained in Ground Four to be without merit.

**GROUND FIVE: THAT THE GOVERNMENT BREACHED THE TERMS OF THE PLEA AGREEMENT:**

23. Paragraph 22 of the Plea Agreement provides:

> The government agrees not to object to a finding by the probation office or a ruling of the Court which awards the defendant an appropriate level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one point reduction for acceptance of responsibility for a total of three points.

(Doc. 11, ¶22).

24. At the sentencing hearing, Judge Hendren noted that according to paragraph 40 of the PSIR, the Government may be considering moving for a third point for acceptance of responsibility, and asked the Government to address that. The Government responded:

> MS. JOHNSON: Your Honor, that was part of our agreement, and we would move for a third point of acceptance.
> THE COURT: All right. So you make that motion, all right. So I think the Court at this juncture is obliged to rule on the outstanding objections, and I want to hear your arguments about that.

(Doc. 45 at p. 378).

25. Judge Hendren allowed both sides to make comments at the sentencing hearing, and when the Government spoke, it was

clear that it was surprised by some of Defendant's comments during the sentencing hearing.

> MS. JOHNSON: Your Honor, with regard to the two objections, one, the number of victims, when the government first objected, clearly, we asked for the two-point enhancement for the number of victims being over ten. I had no idea the magnitude of the scheme and for how long it went on. The government was enlightened today by the defendant himself, who on Wednesday told us that he had been doing this since late 2007. We knew about these nine, these nine loans that total 1.8 million dollars, and the people that it affected.
>
> We knew, we had some reason to believe that it had happened some other times. But then today on the stand he told the Court, because I wrote down the same thing the Court did, two to three hundred and was astonished. But then Mr. Underwood clarified that and said, "That's not what I meant. Actually it was 50 to 60." Fifty to 60 loans in a year and a half or so time. And I understand, Mr. Underwood thinks that's not a big deal because those people got paid off, but the intent to defraud was there from late 2007 up until the FBI went in and stopped it.
> ...
>
> And what's important to note is that this defendant, Mr. Underwood, has never served a day in jail for anything he's ever done. And I can't help but think that that is why it's so easy for him to continue with his criminal behavior, being lying to the banks, lying to the victims, lying to his accountant, lying to the IRS, defrauding creditors, playing fast and loose with the rules when it comes to filling out these mortgages and HUD-1's, not telling the truth to the insurance commission or the securities commission, but yet he wants us to believe that he's telling the truth in court, and that he's really sorry for what he's done, and that he's accepted his responsibility. But everything in his life indicates that he doesn't play by the rules. And maybe that's because he's never had to face responsibility....And we would ask that he be sentenced to a guideline sentence, Your Honor, and would defer any set number of that within the

-21-

guideline to the province of the Court. (Doc. 45 at pgs. 380-381, 388-389).

26. "A defendant's failure to raise an issue on direct appeal constitutes a procedural default barring him from raising it for the first time in a § 2255 motion." United States v. Graham, No. 08-251, 2012 WL 892190 at *2 (D. Minn. Mar. 15, 2012)(citing Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). "A defendant may, however, overcome a procedural default if he can show a cause that excuses the default and actual prejudice from the alleged error, or that he is 'actually innocent.'" Graham, 2012 WL at *2(quoting Bousley v. United States, 523 U.S. 614, 622 (1998).

27. Even if Defendant's claim of breach of plea agreement was not procedurally defaulted, as Defendant is asserting the breach, he has "the burden of establishing it." United States v. Bartel, 698 F.3d 658, 662 (8th Cir. 2012)(quoting United States v. Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011). Defendant has failed to meet his burden and has failed to show cause for the failure or actual prejudice, or that he is actually innocent. The Government in fact made the recommendation it was obligated to make pursuant to the Plea Agreement. The fact that the Government's presentation to the Court was "less than enthusiastic," does not breach the agreement. United States v. Mesteth, 687 F.3d 1034, 1037 (8th Cir. 2012); United States v.

-22-

Has No Horses, 261 F.3d 744, 750 (8ᵗʰ Cir. 2001).

28. In addition, it appears that the PSIR did not fully reflect the extent of Defendant's criminal conduct, as indicated by the Government at the sentencing hearing. Once Defendant signed the Plea Agreement, he did not then have a license after his factual basis statement and plea acceptance to then say or do whatever he wished with no fear of having to meet an argument that he should nonetheless be denied acceptance of responsibility. United States v. Jerry Smith, 590 F.3d 570, 578 (8ᵗʰ Cir. 2009).

The Court finds Defendant's arguments contained in Ground Five to be without merit.

**GROUND SIX: THAT DEFENSE COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO PREPARE THE WITNESSES FOR THE SENTENCING:**

30. Defendant contends that his counsel "failed to make necessary inquires[sic] of the witnesses potential knowledge regarding areas cross-examination or even attempt to prepare the witnesses for questions the governments [sic] could ask on cross-examination such as statements from their direct testimony, other factual information regarding Underwood's character, his criminal activity, and other pertinent background information." (Doc. 64 at p. 16). He further states: "As a result the counsel's attempt to obtain a sixteen (16) level departure with unprepared witnesses became a catastrophe." (Doc. 64 at p. 16).

-23-

AO72A
(Rev. 8/82)

This claim was also not presented on direct appeal, and for the reasons given above, is procedurally barred. However, even if not procedurally barred, Defendant has failed to show how any further preparation of his witnesses would have affected the result. Speculation does not establish <u>Strickland</u> prejudice. <u>United States v. Vazquez-Garcia</u>, 211 Fed. Appx. 544, 546 (8th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 344 (2007). Consequently, Defendant has failed to show cause for his default and actual prejudice resulting therefrom, or actual innocence.

The Court finds Defendant's arguments contained in Ground Six to be without merit.

**CONCLUSION:**

Based upon the foregoing analysis, the undersigned recommends that Defendant's § 2255 motion (Doc. 55) be DENIED and DISMISSED WITH PREJUDICE.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b) & (c)(2). A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997), <u>cert. denied</u>, 525 U.S. 834 (1998). Based upon the above analysis of

-24-

Defendant's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends, that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of May, 2013.

/s/ Erin L. Setser
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-25-