# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Respondent<br>V.<br><br>BILLY CRAIG UNDERWOOD,<br>Movant | ) ) ) ) ) ) ) ) | CRIMINAL ACTION NO:<br>5:09-CR-50090-JLH<br><br>CIVIL ACTION NO:<br>5:12-CV-05104-JLH |

## UNDERWOOD'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Comes now, Billy Craig Underwood, hereinafter referred to as Underwood, and submits the following objections to the Magistrate Judge's Report and Recommendation ("Magistrate's Report") which was filed on May 10, 2013. This Objection incorporates by reference the Section 2255 Model Court Form previously filed as well as Underwood's Reply Brief to the USA's response.

## Statement as to Waiver, Procedural Bar and Cause and Prejudice

"Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255 ……", United States v. Gallegos-Torres, 841 F.2d 240 (8th Cir. 1988)

Throughout the Magistrate's Report it suggest that Underwood's § 2255 issues were procedurally defaulted because either no objections were lodged by Underwood's trial counsel nor were the issues raised by Underwood's appellate attorney on his appeal. Any suggestion by

the Magistrate's Report of procedural default is not only contrary to Supreme Court precedent but Eighth Circuit precedent as well. Relief under § 2255 is available to correct errors that could have been raised at trial or on direct appeal if the petitioner shows cause for the default and resulting prejudice. Anderson v. United States, 25 F.3d 704 (8th Cir. 1994). To use a § 2255 Motion a defendant must establish "(1) cause for the default and actual prejudice or (2) actual innocence." United States v. Moss 252 F.3d 993, 1001 (8th Cir. 2001).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel". Becht v. United States, 403 F.3d 541 (8th Cir. 2005). Further, the Eighth Circuit has recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003).

Allowing the Government to breach a promise that induced a guilty plea violates *due process*. Santebello v. New York, 404 U.S. 259 (1971).The § 2255 Motion filed by Underwood, raises only claims of ineffective assistance of counsel, therefore Underwood is not precluded from presenting the claims for the first time in his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, Massaro v. United States, 123 S. CT. 1690, 155 L. Ed 2nd 714 (2003). "An ineffective assistance of counsel claim may be brought in a collateral proceeding under Section 2255, whether or not the Movant could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500 (2003).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Underwood of his right to file this Motion, this Court is not precluded by the "cause and

prejudice" principle from entertaining, and ruling on the merits and granting the relief requested in his 2255 Motion.

## Ground I
### Failure of Counsel to Conduct a Complete Investigation Of the Law and His Complete Unfamiliarity with The Sentencing Guidelines

As the record reflects, the Court heard testimony on four principle issues: (1) request for a three point reduction for acceptance of responsibility under USSG § 3E1.1 ; (2) 16 level downward departure for *"extraordinary family circumstances"* under USSG § 5H1.6 ; (3) a two point increase because the offense involved 10 or victims under USSG § 2B1.1 ; and (4) a two point increase because the offense involved sophisticated means. In regards to issues (2) thru (4) there was an objection filed by one of the parties. In regards, to issue (1) there were no filed written objections.

First, the Sentencing Hearing began with the Government calling 9 witnesses to demonstrate that enhancement was appropriate for issues (3) and (4). Although, Underwood's counsel cross examined the Government witnesses vigorously, he did not call a single witness, introduce any new evidence or present any witnesses to rebut the Government's arguments. The Government then used one of the 9 witnesses, (Terri Gayer) to question Underwood's claim that he was irreplaceable caregiver in regards to issue (2). After the presentation of the 9 witnesses the Government rested and made no comments regarding Underwood's acceptance of responsibility.

By this time, Underwood's counsel was either aware or should have been aware he had no new evidence to rebut the Government's case on issues (3) and (4). In addition, based upon

meetings with Underwood he knew or should have known if his client testified he would have to acknowledge, if asked, that he had personally used money from more than 10 customers and that the money was disbursed to three separate companies, all owned by Underwood. If Underwood was asked by the Government or the Court, he would single handidly bury all of his attorney's objections to issues (3) and (4). Ultimately, after Underwood's counsel called him to testify, this is exactly what happened.

Second, pursuant to issue (2), Underwood's counsel's attemped to convince the Court that due to "*extraordinary family circumstances*", Underwood should receive a 16 level downward departure due to the irreplaceable financial and medical care Underwood was responsible for giving his disabled son ("Levi"). The Magistrate's Report claims that Underwood's counsel was effective regarding this issue because he had thoroughly researched the Sentencing Guidelines and written an adequate motion. The problem with the Magistrate's Report conclusions is that Underwood's counsel failed to apply the law and the sentencing guidelines to the factual circumstances surrounding Underwood and the care he gave Levi.

The initial hurdle to in obtaining a downward departure under 5H1.6, is convincing the Court that Underwood's caretaking, under Commentary 1 (B) (iii) must be an *irreplaceable and indispensable* part of Levi's wellbeing. <u>United States v. Bueno</u>, 549 F.3d 1176 (8th Cir. 2008). Underwood's counsel had known the Underwoods and Levi for many years, prior to representing Underwood in this criminal manner. They were friends and everyone knew that Underwood worked full-time at his mortgage and real estate companies, while his wife stayed home and took care of Levi. Even though Underwood assumed many of the wife's responsibilities when he came home, there was no way that Underwood could be classified as a

*sole care provider or irreplaceable provider* for Levi as was found in the cases cited by his attorney in his 5H1.6 Motion.

Further, the Motion for receiving the 5H1.6 downward departure disintegrated, as soon as Dr. Edmundo Morales-Cabodevillo ("Dr. Morales") testified regarding Levi and his required care. Both the Underwoods and Dr. Morales represented that the care the Underwoods gave Levi was best for assuring Levi's survival. A believe most parents have when it comes to raising and caring for their children. However, receiving the best care is not the same as receiving irreplaceable care which is the standard that must be met for 5H1.6 departure. Although, Underwood's counsel could have made time to meet with Dr. Morales and thoroughly interview him and prepare him for testifying, he chose to meet Dr. Morales 30 minutes prior to testifying. The result of calling Dr. Morales proved disastrous because as the Court found and the Appellate Court noted, in Dr. Morales's professional opinion, Underwood's son needed only one full-time caregiver (Mrs. Underwood) with occasional assistance from others. Dr. Morales's testimony, Underwood's only independent witness informed the Court that Underwood was not irreplaceable or indispensable to his son's care or his son's sole care provider, which was required to receive this disfavored departure. However, instead of accepting that Dr. Morales had eviscerated the 5H1.6 Departure Motion, Underwood's counsel attempted to resurrect his argument by calling Underwood to testify in regards to the care he gave Levi and thereby, subject him to Government cross examination that neither he or his attorney were prepared.

It would have been obvious to any competent attorney that Dr. Morales' testimony substantially damaged, if not lost, the request for a 5H1.6 departure and the Government's presentation focused on increasing Underwood's sentence based on there being over 10

victims and the crime required sophisticated means. The Government had called their best witnesses they could muster, but the star witness for proving their claims, could not be forced to testify. The star witness was Underwood and Underwood's counsel called on him to testify.

If this Court fails to order a hearing, we will never know Underwood's counsel reasoning for having Underwood testify. Based on the record and the outcome it can logically be assumed that Underwood's counsel made no analysis at all. Whatever, the attorney's reasons, the attorney did not discuss them with Underwood nor did he inform Underwood of the potential ramifications that could befall him once he began to testify. What we do know from the Magistrate's Report, after Underwood testified, the Government informed the court that they questioned whether Underwood had truly accepted responsibility for his crimes (Magistrate Report paragraph 25). Eventually, the Court after hearing Underwood's testimony and the Government denied Underwood a 3 point reduction for acceptance of responsibility.

If Underwood's counsel had been thoroughly familiar with the plea agreement and the applicable laws, he would have realized the statements and actions by the Government outlined in the Magistrate's Report breached the Government's obligations under the plea agreement. in addition, Underwood's counsel unfamiliarity with USSG § 3E1.1 caused him to fail to recognize that the Court's reasoning did not follow the Sentencing Guidelines. "A district court must determine whether a downward offense level adjustment is warranted by taking into account "appropriate considerations," such as those listed in the commentary to 3E1.1. United States v. Lee, 625 F. 3d 1030, 1035 (8th Cir. 2010). Underwood's counsel failed to advise the Court that: (1) Underwood had terminated the operations of his title company, which had given him access to the cash, 6 months prior to the FBI raid; (2) Underwood had been

attempting to obtain financing to repay the stolen money; (3) Underwood prior to the FBI raid had been paying all required monthly payments on the loans he had taken funds from; or (4) his clients timeliness in negotiating a plea agreement. All the above, are consistent with 3E1.1 Commentary 1(A), (B), (F), and (H) of conduct consistent with acceptance of responsibility. Further, Underwood's counsel failed to point out that the conduct surrounding the filing of the Mortgage Registry with the Arkansas Securities Department (Magistrate's Report paragraph 21) was filed prior to Underwood entering into a plea agreement with the Government.

Lastly and most importantly, not preparing a criminal defendant, such as Underwood to testify, is inexcusable for a criminal defense attorney. Underwood's counsel should have known damaging testimony from his own client would be impossible to undo. A "finding based on the credibility of live witnesses can almost never be clearly erroneous." United States v. E.R.B, 86 F. 3d 129, 130 (8th Cir. 1996). By being unprepared, Underwood's counsel called Dr. Morales and Underwood to testify to the detriment of his own client.

## Ground II
### Counsel was Ineffective for His Cumulative Errors,
### In that He Failed to Arrange for Character Witnesses at
### Sentencing, to Provide Letters of Support, Failed to Raise the
### Issue Clarifying the Incremental Monetary Amounts, and
### Failed to Object to the Late Filing of the Inclusion
### Of Additional Materials in the Presentence Report, Contrary
### To the 14 Day Local rules set by the Court

The Magistrate's Report cites Middleton v. Roper, 455 F. 3d 838 (8th Cir. 2006), for the proposition that the Eighth Circuit has repeatedly rejected 2255 motions based upon "cumulative error" for post-conviction relief, which Underwood does not contest. However, Underwood believes that a reasonable attorney would have at a minimum requested

Underwood to provide letters of support and potentially a few character witnesses (both of which were available), Underwood has no way of demonstrating the prejudice resulting from the omissions because he does not know what the Court would do with the information. However, Underwood believes it is outside the norms for counsel to tell his client that character witnesses and support letters will only "muddy the waters," at a Sentencing Hearing.

## Ground III
### Counsel Failed to Advise Underwood as to
### All Facts and Law Relevant to His Decision to Plead Guilty

The Magistrate's Report (paragraph 21) highlights the Courts statements in regards to its decision in denying Underwood any reduction under 3E1.1 for acceptance of responsibility and notes that when given an opportunity Underwood's counsel failed to object to the conclusions reached by the court.

In the courts findings it identifies certain facts that caused his decision to reject granting Underwood a 3E1.1 acceptance of responsibility reduction for admitting that he had defrauded investors by using his "title and escrow company." The Court surmised from Underwood's testimony at the Sentencing that he was denying his previously admitted wrong by finding:

1) Letter to the Real Estate Commission, which stated "I used monies from an escrow account of one of the companies for personal use to keep these companies running";
2) Underwood not to be a creditable when he said "I realize I have done wrong and I realize I need to go to prison.";
3) That Underwood admitted he would continue doing bogus transactions, certainly fraudulent transactions as long as he needed money; and
4) Underwood had not voluntarily terminated or withdrawn from the admitted criminal conduct.

There can be no doubt that the Court made the above findings for denying a 3E1.1 reduction for acceptance of responsibility, but the findings made by the Court are contrary to

the record or the law (sentencing guidelines). Pursuant to the Commentary under 3E1.1 (A). The Court should consider whether a defendant truthfully admits the conduct comprising the offense of conviction. Obviously, as the Court stated, Underwood admitted to defrauding investors by utilizing American Title and Escrow, a company Underwood owned. However, the Court and Magistrate Report's findings for disallowing the 3E1.1 reduction are clearly erroneous on the law and the facts based on the record.

First, the Court claims that Underwood denied his previous admission of guilt based upon the Mortgage Registry Application filed on January 6, 2010. However, the Court fails to address the fact that the purported denial made in the application occurred a month <u>before</u> Underwood executed and pled guilty under the plea agreement. (See Plea Agreement dated January 27, 2010)

Second, the Court found that Underwood at the Sentencing Hearing admitted he was going to continue doing bogus/fraudulent transactions. Again, the record reflects no such statement was made, but it appears one of Underwood's responses was misinterpreted by the Court. The record clearly establishes that American Title and Escrow (ATE) had its operations and escrow accounts closed prior to December 31, 2008, six months prior to the FBI raid on Underwood's businesses. Further, after December 31, 2008, Underwood never received into escrow any loan proceeds from any leading institutions, again. By closing down ATE and its escrow account in 2008 and not establishing another title and escrow business to receive lenders monies, Underwood was clearly complying with 3E1.1 pursuant to Commentary 1(A).

Lastly, Underwood's statement that he would have continued to operate his business was specifically referring to his real estate and mortgage brokering businesses which continued to

operate after ATE had been closed, along with the escrow accounts.. Neither of these two companies activates were claimed by the Government to have done anything illegal, even after the FBI had raided their offices, seized, and reviewed their records.

To suggest that the record does not reflect that Underwood truthfully admitted to his conduct, voluntarily terminated or withdrew from the criminal conduct and his timeliness in manifesting his acceptance of responsibility is to ignore or completely misinterpret the evidence and ignores the Magistrate's Report on finding as to the "<u>surprise</u>" of the Government at the extensiveness of Underwood's criminal activity, which was based <u>solely</u> on Underwood's truthful testimony. Further, relying on pre-plea statements made by Underwood while his counsel was negotiating with the government as a basis for denying acceptance of responsibility is completely contrary to the standards established and the case law for a  3E1.1 reduction.

The failure to object to the Courts decision and preserve the issue for appeal falls squarely into the definition of ineffective assistance of counsel.

## Ground  IV
## Appellate Counsel Failed to Develop Viable
## <u>Issues for Underwood's Appeal</u>

In preparation for writing the Appeal Brief, Underwood's appellate counsel had to review less than 100 pages of court filings and a Sentencing Hearing transcript that was less than 452 pages. After reviewing of the record, appellate counsel failed to advise Underwood that his trial counsel failed to object to the Court's decision to not grant Underwood a three point reduction for acceptance of responsibility under USSG § 3E1.1 and to the Government's statements which breached the Government's obligations under this Plea Agreement.

When Underwood's trial counsel was asked if he wanted to object to the Judge's decision on the acceptance of responsibility point reduction which was based on pre-plea agreement statements and pre-plea actions by Underwood, He said "No, your Honor". (Magistrate's Report paragraph 21). When the Government at the Sentencing Hearing openly questioned whether Underwood had truly accepted responsibility (Magistrate's Report paragraph 25) constituted a  breach of the Government's obligation, under the Plea Agreement. Underwood's counsel failed to object, again. In both situations, trial counsel failed to preserve the issue and as a result if either issue was raised on appeal it would only be reviewed for *plain error*, instead of *de novo* review. United States v. E.V., 500 F.3d 747 (8th Cir. 2007). This type of oversight is not without prejudice. United States v. Jefferson, 569 F.3d 873, (8th Cir. 2009).

Now, take the ineffectiveness one step further. In Underwood's case, appellate counsel after reviewing the Plea Agreement and transcripts and seeing no objections were made by trial counsel regarding the Government's breach or the Court's reasoning for denying a reduction for acceptance of responsibility, elected not to raise either of the two issues on appeal, without advising Underwood. As a result of the appellate counsels actions coupled with that of his trial counsel, Underwood not only did not receive *de novo* review of the two issues by the Appellate Court, but he did not even receive *plain error* review. It is unquestionable; Underwood received no review on these two critical issues. Now trying to raise the two issues for the first time through a collateral proceeding (§ 2255 Motion), the Magistrate's Report claims that the two issues are procedurally barred from being reviewed. There can be no question if Underwood is not allowed to present these two claims he has been prejudiced.

## Ground V
## The Government Breached the Plea Agreement

When reviewing the obligations of the Government pursuant to a binding plea agreement, the Government cannot make comments to accomplish by indirect means that which the Government promised not to do directly. United States v. Hawley, 93 F. 3d 682 (10th Cir.1996).

In order to induce Underwood to plead guilty to one count of Wire Fraud, the Government agreed: (1) to dismiss all remaining counts in the indictment; (2) not to make a recommendation to the Court as to a specific sentence; and (3) not to object to a finding by the Probation Office or by the Court awarding Underwood a decrease in his base offense level for acceptance of responsibility. Further, in regards to (3) above, the Government also, agreed to not only accept the findings of the Probation Office or the Court, but to endorse the Probation Office's findings  for acceptance of responsibility if Underwood's offense level in the Presentence Report ("PSR") was 16 or greater and the Probation Office recommended Underwood receive a two (2) point deduction for acceptance of responsibility. In other words, the Government agreed to move for an additional one (1) point reduction for Underwood's acceptance of responsibility under 3E1.1 (b).

The Magistrate's Report asserts that Underwood's claim regarding the Government's breach of the Plea Agreement is based on the Court denying Underwood any points for acceptance of responsibility and the Government failing to "enthusiastically" endorse a three (3) point reduction for Underwood's acceptance of responsibility for his crimes. The Magistrate's Report explanation of Underwood's claim is erroneous and therefore the Magistrate's conclusions are misguided.

When a plea agreement has been accepted by a court, the court generally interprets the meanings of the terms in the agreement according to basic principles of contract law. United States v. Norris, 486 F.3d 1045 (8th Cir. 2007) (en banc) (plurality opinion). A court should begin its analysis by evaluating the nature of the government's promise. A determination must be based upon "what the defendant reasonably understood when he entered his plea, "without resorting to a rigidly literal approach in the construction of the language." United States v. Greenwood, 812 F.2d 632,635 (10th Cir. 1987). Put another way, courts must determine "whether the Government's *conduct* is inconsistent with what was reasonably understood by the Defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3rd Cir. 1992) (citing United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988).

The Magistrate's Report focused on the Government's promise to move for a one point reduction for acceptance of responsibility, as it's only promise under the Plea Agreement. Based on the one promise theory, the Magistrate's Report came to the conclusion that when the Government moved for Underwood to receive an additional point for acceptance of responsibility, the Government had fulfilled its entire obligation under the Plea Agreement. In fact, the Magistrate's Report relied on paragraph 22 of the Plea Agreement and the Government's oral motion that Underwood had accepted responsibility as the only justification that the Plea Agreement had not been breached.

Underwood's claim for breach of the Plea Agreement, rests primarily on paragraph 22 of the Plea Agreement, as well. In the first sentence of paragraph 22, the Government and Underwood agreed to allow an independent third party, the Probation Office or Court, to determine if Underwood should be entitled to any reduction in his offense level for acceptance

of responsibility pursuant to 3E1.1. If the Probation Office or Court made such a finding, the Government agreed to not object to the finding. In addition, the Government; agreed if the Probation Office found that Underwood had accepted responsibility; recommended an award of two points for acceptance of responsibility; and determined that Underwood's offense level was greater than 16, then they would file a separate motion with the Court, requesting Underwood receive an additional one point reduction based upon Underwood's acceptance of responsibility pursuant to 3E1.1 (b).

Underwood agrees the Government made no formal filings objecting to the PSR's recommendation for acceptance of responsibility and it partially fulfilled its obligation when it asked the Court to award Underwood an additional one point reduction for Underwood's acceptance of responsibility. However, it is the statements by the Government at the sentencing hearing, partially set forth in the Magistrate's Report at paragraph 25, which highlights the Government's breach. In less than 5 minutes after moving the Court for Underwood to receive the 3E1.1 (b) 1 point reduction, the Government stated to the Court that they doubted that Underwood had accepted responsibility. This statement was tantamount to an **objection** to the Parole Office's recommendation and directly contradicted their recognition to the Court that Underwood had accepted responsibility pursuant to 3E1.1 (b).

To determine if a Prosecutor's remarks violate a plea agreement the Court must determine what the defendant reasonably understood when he entered the guilty plea. See United States v. Ovan, 789 F.2d 711, 713 (9th Cir. 1986); United States v. Fields, 766 F.2d 1161, 1168 (7th Cir 1985); United States v. Carbone, 739 F.2d 45, 46 (2nd Cir. 1984). In this case, the Government agreed not to object to the PSR's recommendation for acceptance of responsibility. While a

lawyer may feel that term "object' means not to file a formal objection to the findings in the PSR, to a layman such as Underwood it meant that the Government would not protest, question, or take exception to the findings contained in the PSR. The Government's statement, *"I can't help but think that that is why it is so easy for him to continue his criminal behavior,....., but yet he wants us to believe that he's telling the truth in court, and that he's really sorry for what he's done, and that he's accepted his responsibility...." Can only be interpreted as an objection to the PSR's findings. (Magistrate's Report paragraph 25).* In addition, when referring to Underwood and his past criminal conduct the Government stated *"your Honor, I think there's a strong likelihood that Craig Underwood would continue business as usual if given the chance."* (Sentencing transcript pg. 385), which is also contrary to the Governments promise.

When the Government agreed to request that the Court give Underwood a total of three points for his acceptance of responsibility, the agreement required the Government not only to accept the findings in the PSR but if certain conditions were met, the Government was to <u>advise</u> the Court that Underwood had assisted authorities in the investigation <u>or</u> prosecution of his own misconduct, as required by 3E1.1 (b). The Government's oral motion for the additional one point reduction, (see Magistrate's Report paragraph 24) included no statement to the Court that Underwood had assisted authorities in the investigation or prosecution of his own misconduct as required by 3E1.1 (b). In fact, shortly after moving for the 3E1.1 (b) one point reduction, the Government claimed they *"had no idea of the magnitude of the scheme and how long it went on....".* This statement clearly inferred to the Court that Underwood had not been forthcoming with the Government in disclosing details concerning his misconduct, thus, allowing the Court to assume that Underwood had not truly accepted responsibility by assisting

the Government in regard to his crimes. To continue the deception, the Government failed to advise the Court that Underwood had delivered requested documents (loan files not found by the FBI in their initial search) to the FBI in Ft. Smith, Arkansas office and agreed to make himself available for interviews. The Government also failed to advise the Court, they were the ones who made the decision not to meet with Underwood to discuss his crime in more detail after he pled guilty. It is no wonder they were "surprised" as the Magistrate determined, since the Government elected to not inquire about Underwood's crime until he testified. In the end, it was the Government that had not been completely truthful. The difference between the truth and the whole truth is a lie of omission. In this case, the Government's omissions mislead the Court into assuming Underwood hadn't accepted responsibility under 3E1.1.

The portion of the Sentencing Hearing transcripts highlighted in the Magistrate's Report clearly outlines the inappropriate statements of the Government. If Underwood is not allowed a hearing we will never know why the Government chose to use the words "accepted his responsibility or the reference to pre-plea statements and acts to justify their doubt as to Underwood's acceptance of responsibility..." Maybe, it was done intentionally to undermine the contractual obligations of the Government or maybe it was unintentional. No matter the reason "the doctrine that the Government must adhere to its bargain is so fundamental that even though the Government's breach is inadvertent and the breach did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated." United States v. Hayes, 946 F.2d 230, 233 (3rd Cir. 1991).

In United States v. Mosley, 505 F.3d 804 (8th Cir. 2007), the parties agreed to an acceptance of responsibility reduction. On appeal Mosley contended the prosecution breached the plea

agreement when it argued at sentencing she failed to accept responsibility because of false statements made to authorities prior to the plea agreement. The Appellate Court agreed that the agreement prohibited the prosecution from arguing <u>Mosley</u> failed to accept responsibility based on pre-plea statements, reasoning that in exchange for her guilty plea, the prosecution had promised to tell the Court she had accepted responsibility at the time of the plea agreement. Much like <u>Mosley</u>, Underwood expected the Government to tell the Court that Underwood had accepted responsibility from the date he executed the plea agreement as set forth in 3E1.1 (b). Instead, the Government referred to pre-plea events and questioned whether that Underwood had accepted responsibility.

The Magistrate's Report also fails to identify any clause in the plea agreement which would free the Government from its plea agreement obligations as a result of a breach by Underwood. Yet, based on *surprise*, the Magistrate's Report implies that the Government was justified to openly question whether Underwood's had accepted responsibility for his criminal acts. Just as in <u>Mosley</u>, any statement by the Government that Underwood failed to accept responsibility because of pre-plea actions, would conflict with the Government's promise, and would therefore be considered a breach of the Plea Agreement.

Lastly, the Magistrate's report claims that the PSR did not fully reflect Underwood's criminal conduct is inapposite to Underwood's being entitled to a two or three point level reduction for acceptance of responsibility, since the conduct referred to was either not related to Underwood's alleged criminal conduct or the events occurred prior to Underwood's execution of the Plea Agreement on January 27, 2010. USSG § 3E1.1 Commentary.

The Eighth Circuit has found that, "breach of a plea agreement is not subject to traditional harmless-error analysis in light of <u>Santobello v. New York,</u> 404 U.S. 257, 262-263 (1971)." <u>Mosley</u>, at 810. The Magistrate's Report assessment of the claim and the corresponding evidence is clearly erroneous, which has led to its reliance on inapplicable cases. Based on the foregoing Underwood should be resentenced before a new judge.

**Ground VI**
**Defense Counsel was Ineffective Because He**
<u>**Failed to Prepare the Witnesses for Sentencing Hearing**</u>

Underwood's trial attorney failed to understand the complexities of trying to obtain a 5H1.6 departure, and not adequately preparing his witnesses to testify either on direct examination or cross examination by the Government.

In the context of an ineffective assistance of counsel claim to prevail; (1) a Defendant must show that trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability existed that but for counsel's error, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1985). Put more simply, the ineffectiveness of counsel must upset the adversarial balance in the case. <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986).

As the Supreme Court has noted there is a "strong presumption" that council's actions were the function of trial tactics and not "sheer neglect". <u>Harrington v. Richter,</u> 131 S. Ct. 770, 792 (2011). However, strategic choice made without a professionally competent investigation of the petitioner's options is "erected upon... a rotten foundation" and is not entitled to deference. <u>Foster v. Delo</u>, 11 F.3d 1451, 1457 (8th Cir. 1994). In this particular case, Underwood's counsel by failing to meet with and prepare his Medical Expert Witness, Dr. Morales and to, subject

Underwood's to cross examination without any preparation created a situation at the Sentencing Hearing that not only sabotaged his efforts to obtain a 5H1.6 departure but also detrimentally affected Underwood in receiving a three point reduction for accepting responsibility under 3E1.1 from the Court. In addition, as a result of Underwood's testimony, underwood by himself obliterated his counsel's arguments that there were less than 10 victims and sophisticated means were not needed to commit the crime.

The Magistrate's Report claims that Underwood failed to show how additional preparation of the witnesses would have affected the result. Without a hearing it is difficult to prove how the results might would have changed but for the negligence of counsel. However, the record clearly establishes that had Underwood's counsel properly interviewed Dr. Morales, he would have known Dr. Morales testimony regarding Underwood's family circumstances would directly conflict with established precedent in the Eighth Circuit for receiving a downward departure under 5H1.6. Not only did Dr. Morales's testimony inform the Court that Underwood's caretaking was not an *"irreplaceable and indispensable"* part of the well-being Levi, see United States v. Bueno 549 F.3d 1176, (8th Cir. 2008), but Dr. Morales's testimony regarding Levi's care conflicted with the testimony of Underwood and his wife, see United States v. Underwood, 639 F.3d 1111 (8th Cir. 2010).

To make matters worse, Underwood's counsel elected to have Underwood testify without any preparation to attempt receiving a departure for "*extraordinary family circumstances*" under 5H1.6., after Dr. Morales testified. The Magistrate's Report asserts that mere speculation will not carry the day for establishing Strickland prejudice. Further concludes, Underwood has failed to show how additional preparation could have affected the result. The Magistrate's

Report misses the larger picture regarding Underwood's ineffective assistance of counsel claim. The issue is not just in regards to the preparation but why would Underwood's counsel elect to have Underwood testify, at all.  A "finding based on the credibility of live witnesses can almost never be clearly erroneous." <u>United States v. E.R.B</u>. 86 F.3d 129, 130 (8th Cir. 1996).

It is understood, downward departures for *extraordinary family situations* are awarded in only the rarest of cases. <u>United States v. Bueno</u>, 549 F.3d 1176 (8th Cir. 2007). The Magistrate's Report found that counsel had researched the law and written an adequate motion for requesting a downward departure under 5H1.6. What the Magistrate's Report failed to address was council's decision to have Underwood testify about the daily care he administers to Levi. When their son's physician had already admitted Underwood did not meet the criteria for a 5H1.6 departure, Underwood's counsel clearly failed to understand the full consequences of having Underwood testify. The decision opened the door to allow the Government to question Underwood about the number of victims, whether the crime required sophisticated means, and all types of relevant conduct, including Underwood's background, character, the crimes alleged in the Indictment, and even allowed them to question why Levi was allowed to run up credit card debt of over $25,000 when everyone knew he had no capabilities of holding a job. Underwood was <u>never</u> advised that by agreeing to testify, he would have to be prepared for such intensive questions. Not only was he never advised of the depth the Government could question him, but, his lawyer spent less than 30 minutes preparing him to testify, and as a result Underwood's counsel was not in a position to even attempt to clarify statements made by Underwood.

The Magistrate's Report claims that Underwood failed to show any actual prejudice regarding the testimony he gave at the Sentencing Hearing. However, one needs look no further than the Court's reasoning for disallowing the 3E1.1 reduction, to see the significant prejudice which resulted from Underwood's trial counsel calling Underwood to testify, as detailed in Ground III and Ground V, above.

To summarize, first, the Government called 9 witnesses to testify that either the crime was committed through the use of sophisticated means or that the number of victims exceeded ten. After presenting these 9 witnesses, the Government stated they had no further evidence to present. (Sentencing transcript p. 144). At that time, the Government had made no attempt to disparage Underwood through any relative conduct, or to question Underwood's acceptance of responsibility.

Second, after Underwood's counsel had argued that the number of victims was less than 10 to prevent the Court from applying a two level increase, Underwood under cross examination informed the Court and the Government that he had illegally taken proceeds from approximately 50 to 60 loan applicants. (Magistrate's Report paragraph 25). After Underwood's testament, the Court found that the number of potential victims was clearly over 10, causing a two level increase, overruling Underwood's objection, unfortunately.

Third, by testifying Underwood had to detail the process in which the money was removed from the ATE escrow account. Underwood's revelations again undercut his counsel's objection that the crime was not subject to a 2 point increase for "sophisticated means". The Court again, denied Underwood's objection and applied a 2 point increase for the crime being committed through sophisticated means.

Lastly, based upon Underwood's purported testimony, the Government told the Court that they doubted that Underwood had really accepted responsibility (Magistrate's Report paragraph 25). The Government's statement and Underwood's testimony led the Court to deny Underwood a 3 point reduction for acceptance of responsibility under 3E1.1.

Failure to advise a Defendant how to handle a pre-sentence investigation meeting between a Defendant and a Probation Officer amounted to constitutionally deficient performance under Strickland, United States v. Washington, 619 F.3d 1252 (10th Cir. 2010). To place Underwood in an adversarial position without preparing him adequately or advising him that he had the right not to testify does not just confirm that Underwood's counsel conduct meets the Strickland test for ineffective assistance of counsel, but borderlines on malpractice. Contrary to the Magistrate's Report, the facts in the record confirm that counsel was ineffective under Strickland and if a hearing was granted, as it should, the mistakes made by Underwood's counsel would only be amplified.

## Conclusion

From a review of the factual allegations, exhibits, the record, including but not limited to the Sentencing Hearing transcript and the foregoing argument, Underwood has clearly demonstrated, that his counsel's representation fell outside "the wide range of reasonable professional judgment," Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006). This unreasonable conduct was in violation of Underwood's Sixth Amendment right to effective assistance of counsel under Strickland, in the plea, sentencing and direct appeal process of his case.

While a majority of Underwood's allegations are supported in the record, it is clear that the Magistrate's Report has misinterpreted Underwood's allegations or the facts and thereby relied on inapplicable legal precedent. In addition, it is clear that many of Underwood's claims and/or the Magistrate Reports conclusion may be based on inadequate or not fully developed evidence that require an evidentiary hearing pursuant to Rule 8, which governs 2255 Proceedings.

The Magistrate's Report, alone indicates that there were numerous comments by the Government alluding to Underwood's acceptance of responsibility which breached the plea agreement, not to mention the arguments made in Underwood  Section 2255 filings. As a result, Underwood has made a substantial showing of a violation of his constitutional rights that could be debatable among jurists. Therefore, if the Court dismisses Underwood's claims, including the breach of plea agreement claim, this Court should issue a Certificate of Appealability.

Wherefore, Underwood respectfully requests that this Court to:

(A) Order an evidentiary hearing by: (a) testimony; (b) additional documentary evidence; and (c) legal argument presented at the Hearing;
(B) Order that Underwood's sentence be vacated and that he be resentenced before a new Judge/Court under the terms of the plea agreement (i.e. specific performance);
(C) Issue Underwood a Certificate of Appealability to the Eighth Circuit Court of Appeals; and/or
(D) Grant Underwood such other relief the Court deems just and proper.

Respectfully,

Billy Craig Underwood, Pro se
Reg. # 08263-010
FCI-Texarkana
P.O. Box 7000
Texarkana, Texas 75505

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct and that this Objection to the Magistrate's Report was placed in the Prison mailing system on June 6, 2013.

Billy Craig Underwood

## **CERTIFICATE OF SERVICE**

I, Billy Craig Underwood, hereby certify that I have served a true and
Complete copy of the Objection to the Magistrate's Report and
Recommendation to:


Wendy L. Johnson
Assistant United States Attorney
U.S. Attorney's Office
P.O. Box 1524
414 Parker Avenue
Fort Smith, Arkansas 72902



    By placing the same in the care and custody of Prison Officials at
FCI-Texarkana on this 6th day of June, 2013, with sufficient postage affixed.
It would be noted that this service would be deemed filed at the time it was
delivered to Prison Authorities for forwarding to the court. See Houston v.
Lack, 487 U.S. 266 (1988).



                                                                     Billy Craig Underwood
                                                                    Reg. # 08263-010
                                                                          FCI-Texarkana
                                                                               P.O. Box 7000
                                                      Texarkana, Texas 75505

Billy Craig Underwood
08263-010   D1
FCI-Texarkana
PO Box 7000
Texarkana, Texas
          75505

United States Dis
John Paul Hammer
35 Mountain Stree
Fayetteville, Arka