U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 2 6 2013

CHRIS R. JOHNSON, Clerk
By
      Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    USA | ) <br> ) | CRIMINAL ACTION NO:<br>5:09-CR-50090-JLH |
| V. | ) <br> ) | |
| | ) | CIVIL ACTION NO: |
| BILLY CRAIG UNDERWOOD,<br>    Underwood | ) <br> ) <br> ) | 5:12-CV-05104-JLH |

### Memorandum of Points and Authorities in
### Support of Motion Requesting Court to Issue a
### <u>Certificate of Appealability</u>

    Comes now, Billy Craig Underwood, appearing Pro se, hereinafter referred to as Underwood and submits this Memorandum in Support of his application for Certification of Appealability. Pursuant to Federal Rule of Appellate Procedure 22 (b) (1). This Memorandum includes and incorporates by reference Underwood's Section 2255 Forms, Reply Brief and objections to the Magistrate's Report and Recommendation.

### Request for Hearing
### <u>And Certificate of Appealability</u>

    Section 2255 provides that a federal prisoner may collaterally attack his sentence on the ground that the sentence was imposed in violation of the Constitution or federal laws. 28 U.S.C. § 2255 (2006). A prisoner is entitled to an evidentiary hearing under § 2255 "unless the Motion, files and records of the case <u>conclusively</u> show that the prisoner is not entitled to relief". <u>Engelen v. United States</u>, 68 F.3d 238, 240 (8th Cir. 1995).

    Underwood in his habeas corpus petition, pursuant to 28 U.S.C. § 2255 alleged that his Constitutional Rights under the Sixth Amendment had been violated due to ineffective

assistance of counsel. Under 28 U.S.C. § 2253 (c)(2), a Certificate of Appealability may issue only if the Movant has made a substantial showing of the denial of a Constitutional Right. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003). To make such a showing, the issues must be debatable among reasonable jurist, a Court could resolve the issue differently, or the issues deserve further proceedings. <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997). "Where a District Court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 (c) is straight forward: The Movant must demonstrate that reasonable jurists would find the District Court's assessment of the constitutional claims debatable or wrong". <u>Miller El</u>, at 338 [quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)].

# Issue I
## Underwood's Counsel failed to raise an Objection to the Government's Breach of the Terms of the Plea Agreement
### (Ground Five of Final Order DKT # 68)

A Plea Agreement is a contract between a defendant and the Government. <u>United States v. Andis</u>, 333 F.3d 886 (8th Cir. 2003)(enbanc). Accordingly, the Courts should seek "the intent of the Parties as expressed in the <u>plain language</u> of the Agreement when viewed as a whole", <u>United States v. Martinez-Noriega</u>, 418 F.3d 809, 815 (8th Cir 2005).

In determining whether the Plea Agreement has been breached, Courts determine "whether the Government's conduct is inconsistent with what was <u>reasonably understood</u> by the <u>Defendant</u> when entering the Plea Agreement". <u>United States v. Nolan-Cooper</u>, F.3d 221, 226 (1998). (Citing <u>United States v. Badaracco</u>, 954 F.2d 928, 939 (3rd Cir. 1992). In the present case, the Plea Agreement (DKT # 11 – paragraph 22) is **very clear**. First, the Government promised "<u>not to object</u>" to a finding by the Probation Office or a ruling by the Court which awarded Underwood an appropriate level decrease in his base level offense for Acceptance of Responsibility. However, the Government's further promised Underwood, if certain pre-conditions in the Pre-sentence Investigation Report were met, "the United States agreed <u>to move for</u> an additional one point reduction for <u>Acceptance of Responsibility</u>......"

While terms as "not to object" or "to move for" may have certain meanings to attorneys, to a layman such as Underwood "not to object" meant "not to question" or "oppose" and "to move for" meant "to influence", or "to sway" the Court when advising the Court that

Underwood had "accepted responsibility" for his crimes. This was a significant promise made by the Government, inducing Underwood to enter into the Plea Agreement. The Government drafted the Plea Agreement and obligated itself to request the Court to give Underwood an additional one point reduction because he had accepted responsibility for his crime. It is important to note that the Government did not agree to tell the Court that Underwood had assisted authorities in the investigation of the crime or that he had permitted the Government to avoid preparing for the trial as outlined in USSG § 3E1.1 (b). In fact, there was no mention at all to USSG § 3E1.1 (b) in paragraph 22 of the Plea Agreement. Instead, they wrote that, "<u>they would move</u>" the Court to find that Underwood had "accepted responsibility". Another significant aspect of the Government agreeing to tell the Court that Underwood had "accepted responsibility" is that the Government did not restrict their statements to those outlined in USSG § 3E1.1 (b).

After, merely advising the Court that they "moved for a third point of acceptance", the Government then argued to the Court that they doubted if Underwood really accepted responsibility and outlined their reasoning, which violated the Plea agreement. As the basis for advising the Court that they doubted Underwood "was really sorry for what he has done, and that he has accepted his responsibility", the Government identified the following items of pre-plea agreement conduct that caused them to violate the Plea Agreement.. The list included **1)** lying to banks; **2)** lying to victims; **3)** lying to his accountants; **4)** lying to the IRS; **5)** defrauding creditors; **6)** playing fast and loose with mortgage applications; and **7)** lying to the Insurance Commission. The items were listed even though, the Government knew the claims had all occurred prior to Underwood's execution of the Plea Agreement. However, the Government was not satisfied with just referring to pre-Plea Agreement conduct: They also referred to Underwood's truthful admissions to the Court (which was required by the Plea Agreement), wherein they claimed Underwood admitted the potential number of victims where as many as 50 to 60. The Government in its diatribe, also falsely claimed that Underwood did not stop defrauding people until late 2009, after the FBI raided Underwood's business (the Plea Agreement was executed in January 2010). (See Magistrates Report and Recommendation paragraph 25; DKT # 65). The Government's recitation of these pre-Plea Agreement activities,

for consideration by the Court was inconsistent with their **specific** obligation in paragraph 22 of the Plea Agreement, wherein the Government agreed to tell the Court that Underwood had "accepted responsibility". See United States v. Dewitt, 366 F.3d 667 (8th Cir 2003).

**Just as in United States v. Mosley, 505 F.3d 804 (8th Cir. 2007), where the Court ruled that any argument by the Government that Mosley failed to accept responsibility because of actions which occurred prior to signing the Plea Agreement would conflict with the Government's promise and therefore, would be a breach of the Plea Agreement, Underwood's claim should be similarly treated. Further, it does not matter whether the Government's statements were inadvertent or that the statement influenced the trial Judge. Santobello v. New York, 404 US 257 (1971).**

In the Magistrate's Report and Recommendation (DKT # 65) which was adopted by the Court in *Toto* for being "thorough and well-reasoned" the Court ruled that Underwood's claim for Breach of the Plea Agreement had been procedurally defaulted because the issue was not raised on direct appeal. However, the Court fails to address the fact that Underwood's trial counsel failed to file an appropriate objection regarding the breach at the Sentencing Hearing and thus the error was not preserved for appeal. The Court in reaching its conclusion relied on Matthews v. United States, 114 F.3d 112 (8th Cir. 1997). However, this Court has ruled that a claim of ineffective assistance of counsel should be raised in a § 2255 Proceeding, rather than on direct appeal, because it involves facts outside of the original record. United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003). The Court claims that the Breach of the Plea Agreement was procedurally defaulted because it was not raised on direct appeal, but the real question, to be answered, is the breach claim appealable when trial counsel did not file an appropriate objection? If trial counsel did not preserve the error, then appellate counsel could not raise the issue on direct appeal and thus trial counsel was ineffective. If trial counsel was not required to file an objection and appellate counsel did not raise the issue on direct appeal, then appellate counsel was ineffective. Either way, Underwood's Constitutional Right to ineffective assistance of counsel under the Constitution's Sixth Amendment was breached. However, Underwood could not be aware of the Breach until _after_ his direct appeal brief was already filed with the Appellate Court.

When the Government violated a Plea Agreement, they violate "due process". <u>Santebello</u>. "An ineffective assistance of counsel claim may be brought in a collateral proceeding under Section 2255, whether or not the Movant could have raised the claim on direct appeal". <u>Massaro v. United States</u>, 538 U.S. 500 (2003). Further, the "cause and prejudice" that must be shown to resuscitate a procedural default claim may include ineffective assistance of counsel". <u>Becht v. United States</u>, 403 F.3d 541 (8th Cir. 2005). Because the loss of the three point reduction for "Acceptance of Responsibility' caused Underwood's minimum & maximum Guideline range to increase by 30 months, there can be no doubt from Underwood's allegations and the extended prison sentence he received that the Government's breach and Underwood's attorneys failing to raise the "Breach of the Plea Agreement" issue at both the Sentencing Hearing and on direct appeal, caused significant prejudice to Underwood.

Underwood's 2255 claims were non-speculative, non-conclusionary, factual claims based on his personal knowledge regarding the plea negotiations and his interpretation of the Plea Agreement. Underwood's claims constituted competent evidence and the Government elected <u>not to deny</u> those allegations as noted in the Magistrate's Report. Also, Underwood's allegations regarding the breach of the Plea Agreement do not contradict any evidence in the record. Although Underwood believes the Government's statements outlined in the Magistrate's Report clearly reflects some of the Government's transgression, it is difficult for Underwood as an incarcerated federal prisoner to produce additional evidence without a Hearing.

## ISSUE II
### Underwood's Trial Counsel failed to Adequately Prepare and Advise the Defendant Prior to Testifying at the Sentencing Hearing
### (Ground Six of Final Order DKT # 68)

As the Supreme Court has noted there is a "strong presumption" that counsel's actions were the function of trial tactics and not "sheer neglect". <u>Harrington v. Richter</u>, 131 S. CT. 770, 792 (2011). However, strategic choice made without a professional competent investigation of the petitioners options is "erected upon.....a rotten foundation" and is not entitled to deference. <u>Ramonez v. Berghuis</u>, 490 F.3d 482, 488 (6th Cir. 2007).

In Underwood's case, his trial counsel embarked upon a strategy of negotiating a Plea Agreement in which Underwood would: (1) plead guilty to one count of wire fraud in the indictment and then; (2) insure Underwood would receive a 3 point reduction for Acceptance of Responsibility; and (3) request a USSG § 5H1.6 sentence departure for Extraordinary Family Circumstances. This basic strategy met with Underwood's approval and is not the basis of Underwood's claim of ineffective assistance of counsel.

Underwood's claim of ineffective assistance of counsel entails his counsel failing to professionally prepare the witnesses, (including Underwood), and his failure to comprehend the ramifications of the witness testimony after interviewing each, in light of the legal precedents on each issue, addressed at the Sentencing Hearing., Further, Underwood's counsel did not change his Sentencing Hearing strategy or advise Underwood of the risk of testifying at the Sentence Hearing vs. the likelihood of receiving a 5H1.6 departure.. The following examples illustrate this point:

**Example 1** – Eighth Circuit precedent has clearly established that receiving a 5H1.6 departure is rarely granted and only in extraordinary cases. In fact, the standard for consideration in the Eighth Circuit for a 5H1.6 departure is the defendant should be an "irreplaceable and indispensable" individual in the caretaking of the family member (i.e.: the sole care provider). United States v. Bueno, 549 F.3d 1176 (8th Cir. 2008). After interviewing his three proposed witnesses, Dr. Morales, Rinda Underwood, and Craig Underwood, Underwood's counsel was well aware that Underwood was neither "irreplaceable or indispensable" nor could he be considered the primary care provider for his son.

**Example 2** – In an attempt to keep Underwood from having his guideline points enhanced for there being over 10 victims, Underwood's counsel filed an appropriate objection to the Pre-Sentence Investigation Report. In addition, he thoroughly cross-examined the alleged victims that testified to support his objections. While, Underwood's counsel maintained the number of victims was less than 10, with what appeared to be a plausible theory, his arguments were futile because he failed to recognize that based on Underwood's explanation of the crime to him that the proceeds which were stolen came from over 50 different individual's loans. The Government was oblivious to this fact, until Underwood's counsel had Underwood testify at the

Sentencing Hearing, (Magistrate's Report, DKT # 65 – paragraph 25). Further, the Government could not have obtained this testimony damaging from Underwood unless for Underwood's counsel had Underwood testify on the 5H1.6 departure issue. In addition, if Underwood answered any of the Government's or Court's questions falsely, Underwood himself would be in breach of the Plea Agreement and would risk having all dismissed charges reinstated against him. (Plea Agreement-DKT # 11 paragraph 6 & 7)

    The Court by adopting the Magistrate's Report also found that Issue II was procedurally barred because the issue was not raised on direct appeal. The Court, further found that Underwood failed to meet the <u>Strickland</u> prejudice test because Underwood failed to show how additional preparation of the witnesses would have affected the result. In reaching this conclusion, it is apparent the Court over simplified Underwood's argument on this issue and ignored facts set forth in other parts of the Magistrate's Report that substantiated Underwood's claim on this issue. Issue II is not <u>just</u> based upon under preparing witnesses for the Sentencing Hearing, it includes even having any of the witnesses testify, especially. It includes Underwood's counsel's failure to recognize or ignore the salient facts which he was apprised made all his positions at the Sentencing Hearing untenable if they testified. Further, his failure to comprehend the potential detrimental effect on the acceptance of responsibility departure by subjecting an unprepared Underwood for the Government's cross examination, was more than unprofessional. In particular, Underwood's counsel failed to recognize that Underwood's testimony would increase the number of potential victims to well over 10 and thereby single handedly defeat Underwood's counsel's objection that there were not more than 10 victims. He also failed to realize that Underwood could be required to testify about his pre and post Plea Agreement business activities that could be used to reject the Acceptance of Responsibility reduction. To fully understand this analysis, read the Sentencing transcript but stop after the Government rested. You will discover, the Government made no attempt to disparage Underwood to the Court through his relevant conduct or question whether Underwood had really "accepted responsibility" until after Underwood testified. Underwood is not educated in the practice of law and the prison law library does not provide access to ABA manuals, including ones regarding the preparation of witnesses or the pitfalls of placing the

criminally accused on the stand. Underwood also does not have the funds to engage counsel to advise him on ineffective assistance issues regarding his counsel's conduct and decisions. However, what he does know is that by his attorney calling him to testify without being adequately prepared, both the Government and the Court were able to cross-examine Underwood and misconstrue his testimony to reach inaccurate factual conclusions. Factual conclusions which Underwood's counsel was not prepared to rebut that led to the denial of the Acceptance of Responsibility reduction.

The Court states that Underwood was not prejudiced by being called to testify by his own counsel or that the prejudice claimed is purely speculative, but to make such a claim the Court completely ignores the law and the record established at the Sentencing Hearing. The following points should be noted:

1.) By law, neither the Government nor the Court could require Underwood to testify at the Sentencing Hearing, even after he had made his allocution to the Court.
2.) The Court claimed that <u>based upon Underwood's testimony</u> Underwood denied his stipulation in the Plea Agreement that he devised a scheme to defraud utilizing his Title and Escrow Company (Magistrate's Report – paragraph 21). Not only was this assessment by the Court inaccurate but Underwood's counsel failed to object or attempt to correct the Court's perception, even though Underwood's counsel was aware that Underwood had closed the Title and Escrow Company's operations 7 months before the FBI raid.
3.) The Court found Underwood's pre-Plea Agreement statement to the Real Estate Commission stating "he used monies from his companies escrow account for personal use to keep the companies running" was a quasi-denial of the crime (Magistrate's Report – paragraph 21). Underwood's counsel again failed to object or advise the Court this too, was a pre-Plea Agreement statement, which was made while Underwood's counsel was negotiating the Plea Agreement.
4.) The Court states "that I do not find Mr. Underwood a credible witness", because he believed Underwood was continuing to do bogus transactions until Ms. Tillery went to the authorities (Magistrate's Report – paragraph 21). Again, Underwood's counsel failed to correct the record or adequately prepare Underwood to explain that once Underwood had closed the Title and Escrow Company in November 2008, he no longer held any money in escrow for banks and thus could no longer steal any money.
5.) The Court went on to state, "so I think by testifying under oath... that does not, to me, indicate acceptance of responsibility" (Magistrate's Report – paragraph 21). This conclusion was obviously based upon Underwood's contractually required truthful testimony regarding how Underwood's crime was committed, at the Sentencing Hearing.

6.) The Court's interpretation on Underwood's unprepared testimony was stated in these words, "my overall impression of Mr. Underwood's evaluation of this matter is that this is an inconvenient distraction from his effort to get back in the saddle as a wheeler and dealer....." (Magistrate's Report – paragraph 21). Amazingly, Underwood's counsel knowing that Underwood had not defrauded any Borrowers since the Title and Escrow Company was closed in 2008 said nothing to the Court or attempted to provide contradictory evidence.

7.) Lastly, the Magistrate highlights the detrimental impact of Underwood's testimony, noting that the Government would have only been aware of nine loans, totaling $1.8M dollars. Thanks to Underwood's counsel calling Underwood as a witness the Government advised the Court that they now believe it was actually 50 to 60 loan victims. (Magistrate's Report – paragraph 25). What caused the Government to reach this conclusion? Underwood's truthful testimony from the Government's cross examination.

Failure to advise a defendant how to handle a pre-sentence investigation meeting between the Defendant and a Probation Officer amounted to constitutionally deficient performance under Strickland. United States v. Washington, 619 F.3d 1252 (10th Cir. 2010). The facts and circumstances are comparatively worse in Underwood's case because he was being questioned by the Government in an adversarial manner, without being properly prepared by his attorney. By testifying truthfully and not being prepared adequately by his counsel, Underwood not only destroyed his attorney's argument that there were less than 10 victims, but he was not able to coherently articulate how he had ceased his criminal activity when he closed his Title and Escrow business in 2008. Further, Underwood was unable to clearly articulate that he had been trying to repay the money he had stolen or that his statements referenced by the Government and relied on by the Court in denying Underwood a reduction for Acceptance of Responsibility were pre-plea agreement statements.

Considering, the loss of the three point reduction for Acceptance of Responsibility increased Underwood's sentencing guideline range by 30 months, it is hard to imagine how an outcome could get any worse. Even if, Underwood would have remained silent. The Magistrate had to completely ignored the Court's reliance on Underwood's pre-Plea Agreement statements and testimony in imposing the sentence, to justify the conclusion that Underwood's counsel's decision to not fully prepare Underwood but have him testify did not prejudice Underwood at the Sentencing Hearing.

## Conclusion

The standard for accessing a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the Adversarial Process that it cannot be relied on as having produced a just result. Strickland at 688. Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. United States v. Cronic, 466 U.S. 648, 658 (1984). In the ineffective assistance of counsel context the proper measure of an attorney's performance is "reasonableness under prevailing professional norms". Prevailing norms of practice, such as those reflected in the ABA Standards, may inform our determination of what is reasonable. Strickland at 688.

Unfortunately, the prevailing norms of the legal profession are fact intensive and often require testimony from an expert witness to establish the care required based on the facts presented. Personally, Underwood does not possess any professional legal knowledge and therefore did not know whether his counsel's conduct had deviated from the norms of legal practice or that their conduct created an ineffective assistance of counsel claim. The Supreme Court has observed that "a layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance; consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal". Kimmelman v. Morrison, 477 U.S. 365, 378 (1986).

An Appellate Court reviews questions regarding the interpretation and enforcement of Plea Agreements *de novo*. Where a Plea Agreement has been accepted by the Court, an Appellate Court generally interprets the meaning of the terms in the Agreement according to basic principles of contract law. Mosley. In Underwood's Plea Agreement, the Government agreed to advise the Court that Underwood had "accepted responsibility" and recommend an additional one point reduction for his acceptance if his base level offense was over 16 and if the Probation Office recommend that Underwood receive a two point reduction for Acceptance of

Responsibility. The Record, as outlined in the Magistrate's Report, clearly reflects that these two pre-conditions had been met. The Report also, notes that the Government requested the Court to give Underwood an additional one point reduction. However, the Government failed to advise the Court that they were moving for the one point reduction because they believed Underwood had "accepted responsibility" as was required in the Plea Agreement. The reason for not doing what it contractual obligated itself to do, became all too clear, when 5 minutes later the Government informed the Court that they doubted whether Underwood had accepted responsibility based upon Underwood's pre-Plea Agreement conduct and testimony. Underwood should not be procedurally barred from raising this issue because he has made the requisite showings of counsel's performance falling below an objective standard for attorneys and that such conduct was prejudicial to Underwood as is required by Strickland. Therefore, Underwood request that this Court grant a Certificate of Appealability in regards to Issue I (Claim 5).

In regards to Issue II (Claim 6), Underwood, in this Memorandum, as well as, in his Objection to the Magistrate's Report has gone to great lengths to advise the Court that it has misconstrued Underwood's claim of ineffective assistance of counsel. To put it as succinctly as possible, Underwood's counsel upon deciding to have Underwood testify regarding the request for a 5H1.6 departure failed to comprehend and/or advise Underwood that by testifying truthfully, he could jeopardize Underwood's position, regarding the enhancement for number of victims and the three point reduction for acceptance of responsibility. Underwood's counsel should have known that once Underwood began to testify, the Government under the Plea Agreement (paragraph 18) would be permitted to cross-examine Underwood regarding "all relevant information with respect to Defendant's background, character and conduct, including the conduct that was the subject of the investigation for which he has been charged". Underwood's counsel had no excuse for not preparing Underwood for potential questions the Government might raise regarding Underwood's relevant conduct. Underwood's counsel also failed to advise Underwood that his testimony might be used against him and could potentially jeopardize Underwood's desire to receive a three point reduction for Acceptance of Responsibility, which ultimately occurred. Because Underwood's counsel did not adequately

11

interview his witnesses, he failed to comprehend that based on the care Underwood provided his son and Eighth Circuit precedent regarding USSG § 5H1.6 Underwood would not be considered the primary care provider for his son and thereby make the receipt of such a departure remote, even if Underwood testified.  As a result, the risk/reward elements of the decision to testify should have caused Underwood's counsel pause to re-evaluate the decision to have Underwood testify, or to even attempt obtaining a § 5h1.6 departure. Unfortunately, none of the options were even presented to Underwood. The risk became all too clear at the Sentencing Hearing as the Government and the Court specifically referred to Underwood's testimony and, then denied Underwood's request for a 5H1.6 departure, denied Underwood's request that the Court find that the number of victims was less than 10, and denied Underwood a three point reduction for acceptance of responsibility. In essence, it was three strikes and you're out with the emphasis for the denial being Underwood's testimony. Underwood's pleadings, the Magistrate's Report and the Court's findings at the Sentencing Hearing clearly reflect that Underwood's counsel's representation was not only professionally unreasonable but severely prejudicial to Underwood based on the Strickland test. Therefore, Underwood request that the Court grant a Certificate of Appealability in regards to Issue II (Claim 6).

    Lastly, a Motion brought under § 2255 can be denied without a Hearing only if the Motion, files and records of the case conclusively show that a prisoner is entitled to no relief. United States v. Reed, 2013 U.S. App Lexis 11389 (5th Cir. 2013). Establishing an ineffective assistance of counsel claim, requires Underwood to show counsel's performance fell below an objective standard of reasonableness and that if not for this unreasonable performance the proceeding would be substantially different. Underwood in his pleadings clearly highlights his counsel's unreasonable actions in failing to make an appropriate objection regarding the Government's Breach of the Plea Agreement at the Sentencing Hearing and not raising the issue on direct appeal (Issue I). The decision to have Underwood testify without preparing Underwood for cross examination by the Government nor recognizing and advising Underwood of the potentially detrimental effect of Underwood's testimony could have on the other issues at the Sentencing Hearing was unreasonable , as well(Issue II).

The non-speculative allegations in Underwood's pleadings supported by the Sentencing Hearing transcript represents competent evidence, that if true, establishes that Underwood's counsel actions were outside the established norms for criminal attorneys, and severely prejudiced Underwood in regards to the 108 months sentence he received. **Underwood's allegations also are not contradicted by any evidence in the record.** Further, the Government as noted in the Magistrate's Report elected not to contest Underwood's allegations regarding Issues I and II.

The Magistrate's Report's further claims that Underwood was not prejudiced by Underwood's counsel's actions and inactions, but then finds that the issues raised by Underwood are procedurally barred because his counsel failed to raise these issues on Underwood's direct appeal. This finding alone would suggest that Underwood had received ineffective assistance of counsel. An Evidentiary Hearing could have resolved the Magistrate's Report's inconsistencies by separating the truth from the misperceptions. Without a Hearing there was no way for Underwood to present additional competent evidence to support his claims. As a result Underwood would request that this Court reconsider its denial of Underwood's request for an Evidentiary Hearing and now grant the same (Issue III).

Dated: August 23, 2013

Respectfully Submitted,

Billy Craig Underwood, Pro se
Reg. # 08263-010
FCI-Texarkana
P.O. Box 7000
Texarkana, Texas 75505

13

## CERTIFICATE OF SERVICE

I, Billy Craig Underwood, hereby certify that I have served a true and Complete copy of the Memorandum of Points and Authorities in Support of Motion Requesting Court to Issue a Certificate of Appealability to:

Wendy L. Johnson
Assistant United States Attorney
U.S. Attorney's Office
P.O. Box 1524
414 Parker Avenue
Fort Smith, Arkansas 72902

By placing the same in the care and custody of Prison Officials at FCI-Texarkana on this 23rd day of August, 2013, with sufficient postage affixed. It would be noted that this service would be deemed filed at the time it was delivered to Prison Authorities for forwarding to the court. See Houston v. Lack, 487 U.S. 266 (1988).

Billy Craig Underwood, Pro se
Reg. # 08263-010
FCI-Texarkana
P.O. Box 7000
Texarkana, Texas 75505

14